Ashurst *vs*. Martin.

## ASHURST *VS*. MARTIN.

1. Where it is alleged that a fraudulent intent is apparent on the face of a deed of assignment—the question of fraud, is a pure question of law.

2. A deed of assignment, purporting to be a conveyance of all the estate of the debtor, both real and personal, in trust, to pay creditors, which contains the following provisions, does not, on its face, shew an intent to delay, hinder or defraud creditors : 1st. In the first place, to pay certain creditors described in a schedule marked A ;—2d. To pay, *pari passu*, such creditors described in schedule B, as shall, within a hundred and fifty days from the date of the deed, execute the same, and release and discharge the debtors from future liability;—3d. To pay all debts not previously provided for, but that no debt shall be paid, unless the person entitled thereto, his agent, or some credible person, certify on oath, that the same is due, and founded on a lawful consideration ;—4th. That the trustee shall not be responsible for the acts of his agents, nor be chargable for any moneys, except such as shall be actually received by him;—5. That the trustee shall sell the trust property, at such prices, and on such terms, as he may deem expedient.

3. A provision in the deed of assignment, that the trustee shall be responsible only for his own defaults, must, on its face, be understood to import, that he shall not be liable for the acts of such agents, as are necessary to enable him to execute the trust, selected in good faith, with a due regard to their fitness, and with a proper supervision exercised over them.

4. The time limited by the deed, within which the creditors may come in and assent to it, must neither be too long, and thereby improperly delay the creditors in the collection of their debts, —nor so short, as not to afford time for examination, and therefore, be merely illusory. The period allowed for assenting to the deed, must be stipulated in good faith, and regulated by the situation of the creditors—and, in this case, held, that as the creditors were dispersed over a large space, one hundred and fifty days was a reasonable time, after notice of the deed.

Error to the Circuit court of Tuskaloosa.

Trespass, to try title—tried before *Chapman*, J.

The questions in this case, arose upon a deed of assignment. On the trial below, the plaintiffs, to shew title to the lots sued for, produced and read to the jury, two judgments obtained in their favor, at the Spring term of said court, in eighteen hundred and thirty-two, against J. H. & A. H. Summerville. They also read a deed from the sheriff of Tuskaloosa county, to said plaintiffs, for the lots sued for, which deed bore date on the second July, eighteen hundred and thirty-two, and shewed a sale by the sheriff to the plaintiffs, on the first Monday in July, eighteen hundred and thirty-two, under executions issued upon said judgments; which executions were also produced and read to the jury.

Plaintiffs further shewed, that defendant, some time in the spring of eighteen hundred and thirty-two, purchased said lots at a public sale, made by one George N. Stewart, acting as trustee, under a deed of trust made by said Summervilles, and that under the sale, he went into possession, and was so, at the time suit was brought. Plaintiffs also shewed, that at the sale made by the trustee, public notice was given to all persons attending the sale by the plaintiffs' agent, that they would insist said lots were subject to satisfy their demand. Plaintiffs also shewed, that defendant went into possession, and held under the trust sale made as aforesaid, and proved the value of the rent of the premises.

Defendant, claiming under the sale of the trustee, Stewart, as above stated, offered in evidence the trust deed, as conducing to shew authority in the trustee to sell. The

deed was executed, September ninth, eighteen hundred and thirty-one, and purported to be a conveyance of all the estate of the debtors, both real and personal, in trust, to pay creditors, and contained the following provisions, which only are deemed essential here to state:

1. In the first place, certain creditors named in a schedule marked A, were to be paid;

2. Such creditors as were mentioned in schedule B, as should, within one hundred and fifty days from the date of the deed, execute the same, and release and discharge the debtors from all future liability, were to be paid *pari passu;*

3. All debts not previously provided for, were then to be paid, but no debt was to be paid, unless the person entitled thereto, his agent, or some credible person, should certify, on oath, that the same was due, and was founded on a lawful consideration;

4. The trustee was not to be responsible for any moneys, except what really came to his hands;

5. The trustee was to sell the property at such prices, and on such terms, as he thought expedient.

Plaintiffs moved the court to reject the deed, **and** exclude it from the jury, because said deed, upon its face, was fraudulent and void, as to creditors. The motion was overruled, and the deed read to the jury as evidence in the cause—to which plaintiffs excepted. Verdict and judgment for defendant.

Plaintiffs now assigned for error, that the court below overruled their motion to exclude the deed.

*Peck,* for plaintiff in error.
*Stewart,* contra.

Ashursts *vs.* Martin.

ORMOND, J.—In the argument of this case, the following points are made by the learned counsel for the plaintiffs:

1. The assignment was fraudulent, and void, as to the plaintiffs, because the legal effect of the assignment was to delay, hinder and defraud creditors, of their just and lawful actions, suits, debts, &c.

2. Because it makes the preference given to the creditors designated in schedule B, to depend upon the condition, that they shall, within one hundred and fifty days from the date of the assignment, execute the same, and wholly release and discharge the assignor.

3. In providing that no dividend shall be made to any one under said assignment, unless affidavit be made by the person entitled thereto, that the debt was really due, and founded on lawful consideration.

4. In providing that the trustee shall not be responsible for the acts of his own agents, nor be charged for any moneys, except such as should be actually received by him.

5. In authorising the trustee to sell the trust property at such prices, and on such terms, as he might deem expedient; and

That the assignment, if void in part, is entirely void.

Taking into consideration the present state of the country, produced by the recent convulsion in the commercial world, this is truly an important question. The question of fraud, by which it must stand or fall, is made on the deed itself, without reference to extrinsic proof, to show the intent of the parties.

Although fraud must consist in intention, yet it is cer-

9 P            72

Ashursts *vs.* Martin.

tain, that it may, in particular cases, from the manner in which it is presented, be a pure question of law, for the decision of the court. A deed, unexceptionable on its face, may be made with intent to delay and hinder creditors of their rights : such a deed would be void, but the intention would have to be proved, and being found by a jury, the law would pronounce the deed fraudulent and void. But if the fraudulent intent were apparent on the deed itself, the fact being thus admitted, the question would be one of pure law.

This is supposed by the counsel for the plaintiff in error, to be the predicament of this case, and he has therefore assumed the burden of shewing, that by the admissions of the makers of the deed, they contemplated a fraud on their creditors.

It will be proper, in the first place, to consider the legal effect of the deed of assignment. It purports to be a conveyance of all the estate of the debtors, real and personal, except their wearing apparel, in trust, to pay, first, certain creditors, who are described in a schedule marked A ; secondly, to pay, *pari passu*, such creditors described in schedule B, as shall, within one hundred and fifty days from the date of the deed, execute the same, and release and discharge the debtors from future liability, and thereby to pay all other debts not previously provided for.

It was insisted by the counsel for the plaintiffs, that the creditors named in schedule B, who did not accept the terms offered in the deed, were excluded from any participation in its benefit. But we think the true construction of the deed is, that by refusing to execute the

Ashursts vs. Martin.

release, exacted as the price of being put in the second class, they were merely postponed to the third class, among whom the residue, if any, was to be distributed. The great bulk of the creditors are placed in the second class, and it was doubtless supposed, that the fear that the second class would consume all the effects, would operate as a strong inducement to execute the release. But this is entirely consistent with a willingness on the part of the debtors, to divide among their creditors, what they actually possessed. It is not, we think, a fair presumption, that it was intended, in the possible event that so many of the creditors of the second class should refuse to execute the deed, and comply with the terms offered, as to leave a residue, that it should revert, as a resulting trust, to the debtors.

A similar exposition was made of a deed like the present, by the Supreme court of New York, in the case of Green and others vs. Wakeman, (11 Wendell's Rep. 187.)

It is settled, beyond controversy, that a debtor, in failing circumstances, may convey all his property, in trust, to be equally divided among his creditors, if the property be fairly and honestly devoted to this purpose, untrammeled by onerous conditions on the creditor, and without stipulating for any pecuniary benefit to himself, as the consideration on which the creditor shall be allowed to participate in the assignment.

It would seem that even this would be an invasion of the statute of frauds; as, to some extent, all assignments of this character must delay and hinder creditors of their just actions, by preventing a resort to the ordinary tribunals of the country. It was originally sustained on the

principle, that equality is equity, and that the creditors could not, in a just sense, be *delayed or hindered,* when all the debtor's effects were given up, to be divided among them, in the mode best calculated to yield the largest sum, by preventing a scramble among them.

It is as well settled, that the debtor may give a preference to particular creditors, and declare that such shall be paid their entire demand—but it is not so easy to determine, on what principle of equity, or fair dealing, the right can be sustained. Cases may be supposed, in which the debtor might be justified in making such a distinction, but it too often happens, that the preference is given capriciously ; in most cases, to those confidential creditors, so called, who have furnished the insolvent with the means of obtaining a delusive credit, to the injury of the fair trader ; and if the question could be considered open, it might well be doubted, whether the principles of morality and fair-dealing, and the interest of commerce, would not demand a different decision.

It may, then, be considered as settled law, that a debtor may convey his property, in trust, to pay one or more creditors their debts in full, or to pay his creditors in unequal portions, provided he relinquish all control over it, and stipulates for no pecuniary benefit to himself, but fairly and *bona fide* appropriates it to the payment of his debts. Can he proceed one step further, and require from his creditors, as the condition on which they may receive a benefit from the deed, that they shall release all claims on his future acquisitions?

If this question could be considered open in this State, we should not hesitate to decide, on principle, that such a

Ashursts *vs*. Martin.

stipulation in a deed of assignment, would be a manifest violation of the statute of frauds; and such, too, we consider at the present day, to be the weight of authority, on an examination of the adjudged cases. But we think the question foreclosed in this State, by the decision of this court, in the case of Robinson vs. Rapalye and Smith, (2 Stewart's Rep. 86.) In that case, this point arose directly in judgment, and after full argument, such a stipulation was declared valid. That decision was made in eighteen hundred and twenty-nine, and has not since been called in question in this court, until the present case. After so long an acquiescence, in which the principle then settled has become a rule of propriety, and, in all probability, a vast number of assignments been made on the faith of it, it would, in our opinion, do more harm to reverse, than to adhere to it. We are nevertheless satisfied, that the great objects of enforcing the public morals, and sustaining the interests of commerce, demand that the law should be settled differently.

In justice to our predecessors, whose decision we are here calling in question, it is proper we should say, that the decision was made upon what then appeared to them, to be the weight of authority. Since then, the alarming increase of conveyances of this character, and their effects on the community, has directed attention more particularly to them, and finally, in the great case already referred to, of Green vs. Wakeman, (11 Wendell, 187,) in which all the decisions, both in England and the United States, are examined and reviewed,—such a stipulation was declared invalid. But, although for the reasons given, we feel constrained to adhere to the de-

cision already made, we cannot extend the principle, nor go beyond the letter of that case.

There are other objections raised to the deed in this case, which we will now examine.

It is insisted, that the time within which the creditors were to come in and assent to the deed, (one hundred and fifty days,) was too short. It is true, that the insertion in the deed, of too long or too short a period, for the concurrence of the creditors, after notice of the deed, would be evidence of fraud, as the utmost good faith should be observed; and the time might be so short, as not to afford opportunity for enquiry, and therefore, be merely illusory—or so long, as to keep the creditors from collecting their debts, an unreasonable length of time. The sufficiency of the time allowed, must, in all cases, be a fact depending on the situation and number of the creditors. What would be sufficient, where the creditors all resided in the neighborhood, would be manifestly insufficient, where they were dispersed over a large space. The deed, in this case, does not show where the creditors resided, nor does the deed require notice to be given; but it is clear, that the time could not run against the creditor, until notice was given of the deed. How that fact is, does not appear in the case. Supposing notice to have been given, the time appears to have been reasonable—(See 4 Mason's Rep. Halsey vs. Whiting, 208, and Fox vs. Adams, 5 Greenleaf.)

It was also objected, that the conditions annexed to the deed, rendered it void. The first is, that no dividend or debt should be paid by the trustee, unless the person entitled thereto, his agent, or some credible person, certi-

Ashursts *vs.* Martin.

fy on oath, that the same is really due, and founded on lawful consideration.

We can see no objection to this provision. It was probably inserted for the security of the trustee, and to prevent suits on unliquidated claims. It could not operate prejudiciously on the *bona fide* creditor, and others have no right to complain.

The provision, that the trustee shall be responsible for his own acts and defaults only, and shall not be charged with, or for any sum or sums of money, other than what shall actually come to his hands, or with any thing that shall happen, *without his wilful default,* deserves a more serious consideration.

It has been argued by the plaintiffs' counsel, that this provision is a full immunity to the trustee, and that he is responsible in no case, but where the money comes to his hands. It could not be tolerated, that a trustee should, by virtue of this provision, shelter himself, in a case where the property entrusted to his charge was wasted by his agents, if by a proper supervision and control over them, such a result could have been prevented, or if they were improperly selected—such conduct would be a *wilful default* in the trustee. By voluntarily becoming a trustee, he subjects himself to the responsibility which that office imports—as such, if agents are necessary to the transaction of the matters confided to him, or to aid him in the execution of the trust, and they are selected in good faith, with a due regard to their fitness, and a proper supervision over them be exercised, he would not be responsible for their malversations.

The selection of the *debtor* as the agent, in connection

with the irresponsibility of the trustee, for his acts, would, so far as the debtor is concerned, deprive an assignment of all its terrors, and virtually give him the control of his property, in defiance of his creditors.

The provision must, then, on its face, be understood to import, that the trustee shall not be liable for the acts of his agents—such agents being necessary to enable him to execute the trust—selected in good faith, with a due regard to their fitness, and a proper supervision exercised over them.

That the trustee should be invested with a discretionary power in the sale of the property, is necessary to enable him to execute the trust. This power, however, like all others with which he is invested, must be exercised in reference to the objects of the trust, and the interest of the creditors, in good faith. The question here, is not as to the abuse of the power, which cannot be presumed, and is not insisted on.

From this examination, it does not appear that there is any thing on the face of the deed, showing an intention to delay, hinder or defraud creditors—and the court below, therefore, did not err in refusing to permit it to be read to the jury;—the judgment of the court below is therefore affirmed.