## ELMES v. SUTHERLAND.

1. A voluntary conveyance by a debtor to a trustee of lands and personal property for the purpose of securing the payment of debts, some of which are past due, and others are running to maturity—fixing a distant day after the maturity of the youngest debt—and providing that until then the debtor shall continue in the possession and use of the property, applying the profits to the payment of the debts, is not materially different from a mortgage executed under the same state of facts ; and when it does not appear by the deed that the debtor is in failing circumstances, the stipulation that he may remain in possession and use of the property, does not *per se* make the deed void.

Elmes v. Sutherland.

2. Neither is such a conveyance void *per se* from the circumstance that perishable articles are conveyed by it with a reservation of a use to the debtor until the time fixed by the deed as the law day. Such a stipulation is good between the parties, though it is possible it may have no effect against an attaching creditor.

3. Such a deed however is invalid to pass the title to the trustee until it is assented to by the creditors whose debts are intended to be secured by it. Until such assent, the deed operates only as the conveyance of a power which is revocable by the debtor ; and the same effect is produced by the levy of an execution.

4. It is questionable whether this Court can entertain jurisdiction when the final decree is *pro forma* by the consent of the parties ; but when the argreement is that such a decree shall be rendered, but none in point of fact is given, the writ of error will be dismissed.

Writ of error to the Court of Chancery for the 26th District of the Middle Division.

The case made by the bill is substantially this:

On the 14th of April, 1842, Wiley J. Sorell, executed a deed of trust which on its face appears as an indenture *tri-parte.* Sorell of the first part, Sutherland, the complainant, of the second part, and James M. Sorell and Henry Adams, executors of the estate of John Sorell, deceased, John Sorell, James M. Sorell, James Pylant, Person Davis, and Larkin Barnett of the third part. It recites, that the party of the first part is indebted severally to the parties of the third part in various sums of money, some of which appear from the instruments of indebtedness described in the deed to have been past due at the date of the deed, and others then running to maturity; but all of the debts falling due at periods between the date of the deed and the 27th March, 1843 ; and that the party of the first part is willing and desirous to secure them. The deed then proceeds to convey to the party of the second part in consideration of what is recited, and for the further consideration of one dollar, certain lands, slaves and other personal estate, "upon trust nevertheless; that the said Sutherland, his heirs, &c., shall permit the said Wiley J. Sorell to remain in quiet and peaceable possession of the property conveyed, and apply the profits thereof to the payment of the debts before described, (except the profits of the present year's crop, which is hereby set apart for the payment and discharge of a certain judgment in favor of Griggs & Elliott, obtained in the County Court of Dallas county, at the August term, 1841,) until the

first day of April, 1845, which is the time hereby set for the payment of the debts, notes, and several sums of money hereinbefore described and hereby secured, or intended to be secured. And upon the further trust, that the said Sutherland, his heirs, &c., shall, or will, as soon after the happening of such default of payment, if any default shall be made, on the sums aforesaid, as he, his heirs, &c., shall think proper; or the said parties of the third part, or any or either of them, or their executors, &c. shall request, sell the said lands, slaves and personal property before conveyed, or such part thereof as the said trustee or his representative hereby authorized to act, shall think sufficient for the purpose and proper, to the highest bidder for ready money, at public auction, in the town of Centreville, after having given ninety days notice thereof in one or more newspapers printed in Tuscaloosa, and also notified the same by advertisements set up at the court house of Bibb county for sixty days previous to the day of sale; and out of the money derived from such sale, after defraying the expenses thereof and all the expenses attending the premises, pay to the said persons hereby secured, or intended to be secured, their heirs, &c., with the interest which may thereon have lawfully accrued, and the balance, if any, shall pay to the said Wiley J. Sorell, his heirs, &c. · But if the whole of said sums heretofore described shall be fully paid off and discharged, to the said persons, their heirs, &c., on or before the first day of April, 1845, when the same is hereby made payable, so that no default of payment be made, then this indenture to be void, or else to remain in full force and virtue." This deed is signed by Sorell, the grantor, and by Sutherland the trustee, and not by any one of the parties of the third part. It was proved and admitted to record on the 4th May, 1842.

Elmes, the defendant, obtained a judgment against Sorell, on the 22d April, 1842, and having sued out execution had the same levied on all the lands and six of the slaves conveyed by the deed. This levy was made in November, 1842, the said Sorell being then in possession.

The bill asserts, that the deed was executed honestly and fairly, and that the property thereby conveyed will not probably produce more than the debts intended to be secured, after satisfying an outstanding mortgage to one Stoutenborough, which

is a prior lien on the lands conveyed by the deed. It also asserts, that if the property levied on is sold under the execution, the trustee may be greatly prejudiced and injured.

The prayer is for an injunction, and that the interest of Sorell and the *cestui que trust* under the deed may be separated, and that of the former only subjected to sale.

The bill is filed by Sutherland as complainant, and Elmes is the only party made defendant.

He appeared and moved to dismiss the bill for want of equity. The Chancellor refused this motion, and it was then agreed by the parties, that a decree *pro forma* should be rendered for all that is alledged or prayed for by the bill, in order that the case might be taken to this Court for revision. Upon the motion to dismiss the bill no specific decree is rendered by the Court of Chancery, but the writ of error seems to be sued out upon the idea, that this agreement is to be considered as a decree.

It is now assigned as error that the Chancellor refused to dismiss the bill.

J. W. Pryor, for the plaintiff in error, made the following points:

1. The deed of trust is incomplete and has no legal efficiency until executed, or at least assented to in such a manner as to bind the third parties. [Townson v. Tickle, 3 B. & A. 31; Garrard v. Lord Lauderdale, 3 Simmons 1; Manton v. Coburn, 17 Mass. 454.] It is true, in some cases, that the assent of the *cestui que trust* will be presumed, but that is so only when the deed is beneficial and unconditional. [Tompkins v. Wheeler, 16 Peter's, 106; Dale v. Bodman, 3 Metcalf, 139; Russell v. Woodward, 10 Pick. 408.]

If, however, the deed had been executed by the parties of the third part, or their assent to it was presumed or shown, it is notwithstanding, fraudulent and void as to other creditors:

1st—On account of the existence of the judgment in favor of Grigg & Elliott.

2d—Because a part of the property thus attempted to be placed beyond the reach of the law was perishable, and must necessarily have been injured or consumed before the expiration of the time of forfeiture. The hogs, carriage, cattle, household and kitchen furniture are of this nature. [Wiswall

34

v. Ticknor & Day, 6 Ala. Rep. 178; Robbins v. Parker, 3 Metcalf; Byrd v. Bradley, 2 B. Mon. 239; Am. Law Mag. No. 5, 186.]

3d—The reservation of the possession to the grantor for such a length of time, is conclusive evidence of fraud. [Harris v. Sumner, 2 Pick. 129.]

3. If the deed on its face is good, the bill is notwithstanding, entirely defective, as it should have averred, the debts attempted to be secured were actually owing from the grantor. The recitals in the deed neither establish the fact nor dispense with the necessity for the averment. [McCann v. Wood, 4 Ala. Rep. 258; Bank at Decatur v. Kenney, 5 Ala. Rep.; Smith v. Acker, 23 Wend. 653; Hamford v. Artcher, 4 Hill, 271, 295; Russell v. Woodward, 10 Pick. 408; Rodgers v. Hall, 5 Watts, 106; Blan v. Maynard, 2 Leigh. 29.] The allegation that the deed was made *bona fide*, cannot prevail against the fraudulent intent. [Grover v. Wakeman, 11 Wend. 187.]

The bill also ought to alledge, that the property conveyed was not reasonably worth more than sufficient to secure the debts provided for. [Borden v. Sumner, 4 Pick. 265; Straper v. Eckhart, 2 Whart. 302.]

4. The complainant had a complete and adequate remedy at law.

No argument was submitted on the part of the defendant in error.

GOLDTHWAITE, J.—1. In the consideration of this case, it is important to bear in mind that, although the assignment upon its face appears to be the mere voluntary act of the debtor and without any immediate consideration passing from the creditors named in it, yet there is nothing to show that the debtor at that time was in failing circumstances. In the first aspect, it differs from a mortgage *executed* concurrently with the creation or extension of a debt, and in the last, from an assignment by an insolvent debtor, in contemplation of his insolvency. This distinction between this case and that of an assignment by an insolvent debtor, in view of his insolvency, renders it unnecessary to consider what effect the actual or contemplated insolvency of the debtor would have upon this deed; because divested of this circumstance, the deed of trust

Elmes v. Sutherland.

is not materially different from a mortgage executed under the same state of facts. We may then examine the case as if it was a mortgage executed by the debtor subsequently to the creation of his debt, but without any actual agreement with, or assent of all or any of the preferred creditors. The first question then is, as to the validity of the deed in consequence of its containing a stipulation that the debtor shall remain in possession of the property, to use it for his own advantage, but to apply the profits to the extinguishment of the named debts.

It seems to us that this stipulation by a solvent debtor amounts to nothing more than is found in every mortgage. The debtor clearly has the right until the law day to remain in possession, with the perception of the profits to his own use, and until the law day has passed his possession is neither fraudulent *per se*, nor evidence of fraud. Repeated decisions of this Court have settled however, that such a stipulation has not the effect to prevent any other creditor from making a levy upon the interest remaining with the mortgagor.. It is therefore clear that this stipulation, in the manner in which the case is presented, does not make the deed void.

2. The next question upon the deed itself, is, whether the reservation of a use in the perishable articles, such as the carriage and harness, wagon, cart, farming tools, household and kitchen furniture, cattle and hogs, is sufficient to disclose a fraudulent intention as to other creditors, and consequently to avoid the deed? This is more difficult of solution than the other, but we can perceive no reason why a mortgage by a debtor not in failing circumstances, and intended merely as a security, should be absolutely void by the reservation of such a use. The case of Robbins v. Parker, 3 Metcalf, goes only to the extent of declaring the mortgage void as to the particular perishable article. Considered as a mere security, and between the parties themselves, there is no just reason why a creditor may not be allowed to take a mortgage upon a perishable article, and yet permit the debtor to remain in the possession and use of it until the law day. It is possible that the reservation of such a use might have the effect to render the particular perishable article subject to levy and sale at the suit of another creditor, though as to this we express no opinion.

It is very obvious too, that the reservation of such a use by a debtor shown upon the face of the deed, or otherwise, to be in failing circumstances, might receive a very different construction. We are therefore of the opinion, that the reservation in this deed is not *per se* fraudulent, so as to avoid the deed.

These are the only objections urged against the deed, as being apparent upon its face, and neither of them are sufficient to warrant a Court in declaring it void.

3. The remaining question is one quite novel in this Court. The defendant to the bill insists there is no equity in it, for the reason, that the creditors named as the third parties to the deed have never executed it; and it is not shown they ever have assented to its provisions, by binding themselves not to sue the debtor until after the expiration of the time fixed as the law day in it. This involves an inquiry, whether such execution or assent is necessary? It has been decided that the assent of creditors will be presumed when the assignment is for their benefit. [Brooks v. Manbury, 11 Wheat. 78; Tompkins v. Wheeler, 16 Peter's, 139.] But, conceding this as the general rule, it is insisted that this presumption only arises when the deed is absolute and unconditional; and that it is repelled whenever the conditions imposed are otherwise, or an obligation is cast on the creditor to do or omit any thing whatever. It is very evident that the debtor never intended the deed should be valid, unless the time of payment of all the debts was extended by the creditors to the first April, 1845. In order then for the deed to have any effect it was necessary, in our judgment, that all the creditors named in it should have signified their acceptance of the conditions imposed by it. We say *all* the creditors, because the deed contains no stipulation that less than all should receive any benefit from it, and it is apparent that no benefit would result to the debtor if it was refused by any of them. The cases are numerous to show that deeds of this nature are of no validity until assented to by the intended beneficiaries. [Story Eq. 236, § 972, and cases there cited. See also Russell v. Woodward, 10 Pick. 408; Dale v. Bodman, 3 Metcalf, 139.] Until then, the deed is considered as conveying a power only to the trustees which is revocable by the debtor. If revocable by the debtor previous to assent being given by the creditors, it follows, that the levy of an exe-

cution produces the same consequence. As the complainant's title to the property levied on as against the execution creditor, depends upon the assent of the creditors named in the deed, this should have been shown affirmatively by the allegations of the bill. Without such allegations the bill is fatally defective, and ought to have been dismissed as containing no equity.

4. If in point of fact a decree had been rendered by the Chancellor for the relief prayed by the bill, in accordance with the agreement of the parties, it would present a question worthy of grave consideration, how far this Court could take cognizance of the cause under such circumstances, as it only has appellate and not original jurisdiction. It is quite possible that we might feel constrained to repudiate a case, where the parties had consented to a *pro forma* decree. It does not appear however, that there is any final decree in the case, and the consequence is, that the writ of error must be dismissed.