## KINNARD v. THOMPSON.

1. A deed conveying property in trust *absolutely* for the benefit of specified creditors, if *bona fide* is valid as a conveyance in consequence of the presumed assent of the creditors, and is not a mere power, subject to be defeated by the levy of an execution at the instance of one of the creditors named in it.

Writ of Error to the Circuit Court of Sumter.

DETINUE to recover certain slaves.    The plaintiff, Kinnard, made title through a deed executed by S. D. Hooks, on the 11th April, 1845, to him, conveying the slaves in controversy with other property, upon certain trusts which will be hereafter stated.    This deed recites that Hooks is desirous to raise money to pay off executions which otherwise can be met only by a sale of his property, which would destroy his

prospect of making a crop for the then present year. For this purpose Thomas Wright and Susan Hooks had joined with the grantor to draw a bill of exchange for $1,600, of even date with the deed, payable ten months after date, to the order of David Hooks, on D., S. & Co. of Mobile; and one Rhodes, for the accommodation of the drawers and indorser, had agreed to guarantee to save the drawees harmless, if they would accept the bill upon the express condition that the drawers and indorser should stand bound to him for any loss or payment he should be put to on account of said guarantee, and that the said grantor should also secure him hereby against said undertaking.

The deed recites other indebtedness to Rhodes, by a note of the grantor, secured by Thomas Wright and David H. Hooks, as well as other liabilities incurred by Wright and other persons on behalf of the grantor; and then proceeds with the recital of other debts due from the grantor, amongst which is one due to Elliot Robins, which is said to be in suit in the county court.

After describing the property conveyed to Kinnard, the plaintiff, the deed declares the conveyance is upon trust.

1. That the property is to be held and applied to the full indemnity of the parties to the bill before named—to that of Rhodes, its guarantor, and to whomsoever may accept it or advance upon it—and then the note payable to Rhodes as before set out.

Secondly: after the full security and payment of said bill, and the other debts mentioned in the first class, then the property to be held and applied equally for the other named beneficiaries, except that a cause in favor of a bank therein described, is only to be paid in the event of its obtaining judgment against the grantor in the supreme court.

For the more full and certain execution of the trusts, as well as for the greater security of the beneficiaries, the trustee is empowered, at any time that he or Rhodes shall consider it necessary for the interest of the beneficiaries, to take possession of the property conveyed; and should the grantor fail to meet the bill, then Rhodes may direct the trustee to sell the property conveyed for the purpose of paying the same;

or should it become necessary to close the trust for the purpose of securing the other liabilities on it the deed secured, then such beneficiaries as may represent the greater portion of the sums secured, shall have power to instruct said trustee to sell: and said trustee, upon such notice, shall sell the property conveyed, either publicly or privately, as he may see best, for cash—if publicly, on thirty days' notice.

The deed also provides, that if the beneficiaries of the first class shall be paid, the trusts shall inure to the benefit of those of the second class.

The defendant, Thompson, seized the slaves in controversy, by virtue of an execution against the grantor, at the suit of Robins, one of the creditors in the deed recited, and the facts following were admitted, to wit: That the debts mentioned in the trust deeds were *bona fide;* that Thomas Wright and Susan Hooks, who were joined in the bill as drawers, and David H. Hooks, its indorser, as well as Rhodes, the guarantor, became such for the accommodation of the grantor, on the express condition they should be secured by a trust deed; that the execution of the deed and the making of the bill were simultaneous acts, and that these parties assented to the deed; that the bill was not paid by the grantor; that Rhodes instructed Kinnard to proceed and close the trust; that in obedience to this direction, the property was advertised for sale before and at the time of the levy; that the property remained in the possession of the grantor from the time of executing the deed until the levy; that the deed was *bona fide.* There was no proof that any of the beneficiaries of the deed, except the parties to the bill and Rhodes, had assented to the deed; and it was shown the execution in favor of Robins was for the same debt mentioned in the deed as due to him.

Upon these facts, the court charged the jury, that the execution of the deed under these circumstances was, as against Robins, only the execution [creation] of a power; that upon its face, and unexplained, the deed does not appear to be beneficial to Robins, and his assent to its provisions could not be presumed by the jury; that Robins having dissented from

62

the deed by levying his execution, the defence in the absence of other evidence, must prevail.

The plaintiff excepted to this charge, and it is now assigned as error.

SMITH, for the plaintiff in error, insisted the deed was nothing more than a security for a debt presently created, and in that view was free from objection.

GATES, for the defendant in error, made the following points:

1. Deeds of trust, made for the benefit of creditors, which postpone the debts beyond the day of payment, are inoperative, unless assented to by *all* of the creditors intended to be secured. [Lockhart v. Wyatt, 10 Ala. Rep. 231, and Hodge v. Wyatt & Houston, Ib. 271; Elmes v. Sutherland, 7 Ala. Rep. 262.]

2. The case of Dole v. Bodman, et al. 3 Metcalfe R. 139, asserts it to be the law that no deed of this character is operative as a conveyance until the beneficiary or beneficiaries assent to it. It must be clearly beneficial and unconditional before the assent of the beneficiary be presumed; in this case, there can be no presumption of assent, for the sheriff justifies by virtue of a levy made by him on the property here conveyed, by virtue of an execution in favor of the beneficiary, Robins, against Hooks, the grantor.

3. The deed in this case is not unconditional—witness one of the inducements recited for making the deed; to wit, the raising of a crop, &c. See also, the conditions imposed with regard to the manner of closing the deed; Rhodes might cause it to be closed, or a majority of the beneficiaries, who represent the larger claims. This provision might operate with extreme hardship upon the smaller creditors, had they assented to it. And it could certainly afford no presumption of assent on their part.

4. The fact, that some of the debts were created simultaneously with the deed, cannot change the character of the deed. In the case of Dole v. Bodman, et al. 3 Metcalfe, 139, there, although the mortgage was not executed at the time of

the execution of the note, yet it was understood at that time, that the security should be given.

GOLDTHWAITE, J.—In Elmes v. Sutherland, 7 Ala. Rep. 262, we adverted to the distinction supposed to exist between a security executed concurrently with the creation or extension of a debt, and a voluntary conveyance by the debtor made for the purpose of inducing his creditors to give him delay, and held the latter was to be considered only the grant of a power which was revocable by the debtor, until the conveyance was accepted by the creditor. In the subsequent cases of Lockhart v. Wyatt, 10 Ala. Rep. 231, and Hodge v. Wyatt, Ib. 271, we held the power granted by such a deed was destroyed, when a levy was made before the assent of all the creditors was given; but in all these cases, it was clear from the deed, the debtor intended it to operate as a conveyance, only upon the event the delay stipulated for was given. The difference between the case at bar and those referred to, consists in the facts, that no delay is stipulated for by the debtor, and that the property conveyed is absolutely, and under all circumstances, devoted to the payment of the specified creditors. In this respect, it strongly resembles the cases of Dubose v. Dubose, 7 Ala. Rep. 235, and Allen v. Montgomery and West Point Rail Road Co., December Term, 1846, when similar deeds were sustained against subsequent execution creditors. The decision of Dole v. Bodman, 3 Metc. 189, to which our attention is called by the defendant, proceeds on a doctrine which, however well established in England and in the courts of Massachusetts, has been repudiated in this court as well as in most others of the Union. The rule with us, is, that the assent of the creditor will be presumed when the assignment is for his benefit. [Robinson v. Rapelye, 2 Stewart 86; Gazzam v. Points, 4 Ala. Rep. 374; and is the same in the supreme court of the United States—Brooks v. Marbury, 11 Wheat. 73; Tompkins v. Wheeler, 16 Peters, 139.]

We do not question that Robbins, although secured by the deed, might refuse to accept its provisions; but his doing so cannot affect the rights of the other creditors, for whose benefit, as well as for his the deed was made. The

deed is not of that class which requires the assent of all the creditors named in it before it becomes operative as a conveyance, but is valid and operative from its execution, in consequence of the presumption of assent arising from its being beneficial to the creditors, to whom the property conveyed by it is devoted.

It being. admitted the deed is *bona fide*, we think it clear the court erred in charging the jury it was the mere grant of a power, which the levy of Robins' execution defeated,

Judgment reversed and cause remanded.