RANKIN, DURYEE & CO. et al. *vs.* LODOR et al.

1. A debtor who is in failing circumstances may make an assignment preferring one creditor or class of creditors to another; if the assignment conveys his whole property, and contains no stipulation for a share of the proceeds to result to himself, and reserves no control whatever over the property, he may provide for the payment of one class of creditors absolutely, and for another class only on condition of their releasing all further claim upon him, by signing the deed containing such stipulation.

2. If the provisions of the deed are clearly beneficial to the creditor, his assent to it will be presumed, without his signing it; otherwise, his assent must be actually had.

3. Generally, where the debtor seeks to postpone the payment of his debts, by conveying property in trust to secure or pay them, *all* the creditors must assent to the deed, to give it *any validity*, because that is the manifest intention of the grantor.

4. A deed of trust executed by a firm and one of the partners individually, who were in failing circumstances, to secure the payment of their debts, contained the following provisions: The trustee was authorized to receive, collect, sell and dispose of all the property conveyed by it, with all convenient speed, on such terms as he might deem expedient, and, out of the proceeds, after first discharging the costs and expenses of the trust, to pay the debts of the creditors, who were made parties of the third part to the deed, according to their priority in signing it; first, those who assented to it within *ninety* days were to be paid equally in full; secondly, those who assented to it within one hundred days, in like manner, out of the residue; and thirdly, those who assented to it within one hundred and twenty days. The trustee was also authorized to carry on the business of the firm until the assent or dissent of the creditors should be expressed, or until the expiration of a reasonable time for ascertaining it, and to employ clerks and agents to assist him in the execution of the trust; the trustee was not to be chargeable, except for his own acts and defaults, nor for any moneys except such as actually came to his hands, nor for any loss that might happen without his wilful default. The deed also contained a provision, by which those creditors who assented to it, released all their claims and demands against the grantors. *It was held:*

    1. That the assent of *all* the creditors was not required, to give the assignment operative force and effect as a deed; but the assent of any one of them made it complete in law, and vested the whole legal title in the trustee.

    2. That after the whole legal title was thus vested in the trustee, the levy of attachments and executions on the property by other creditors did not give them any preference or priority over those creditors who subsequently assented to the deed, within the time prescribed by it.

ERROR to the Chancery Court of Dallas.

Heard before the Hon. W. W. MASON.

Rankin, Duryee & Co. et al., who were mercantile firms doing business mostly in New York, filed their bill in equity against the defendants in error, to obtain the aid of chancery in the collection of their several debts against the firm of E. & J. W. Ransom, which was composed of Elijah Ransom and Joel W. Ransom, and against said Elijah Ransom individually.

The bill alleges, after describing particularly the several debts, that judgments have been obtained on some of them, and that legal proceedings have been commenced, and are still pending, on others; that, in the suits now pending, original or ancillary attachments have been issued against said Joel W. Ransom, on the ground that he is a non-resident; and that either attachments or executions had been issued in all the cases, and levied on certain property, belonging either to the said firm or to said Elijah individually, but covered by an assignment executed by them to John A. Lodor as trustee, on the 13th of October, 1849. This deed is alleged to have been executed while the said Ransoms were in failing circumstances, or already insolvent to a considerable amount, and its material provisions are set out in the bill, to which it is made an exhibit.

This deed may be thus described: It purports to be a deed between three parties, viz: Elijah Ransom and the firm of E. & J. W. Ransom as grantors, Lodor as trustee, and the creditors of the grantors as beneficiaries, or parties of the third part. The debts due from the grantors to the beneficiaries are first specifically enumerated, amounting in the aggregate to over sixteen thousand dollars. For the payment of these debts, the grantors convey to the trustee their whole stock of merchandize, their notes and accounts, several lots in Cahawba, a slave, and some other personal property, upon the following trusts: To sell and dispose of all the property conveyed, with all convenient speed, on such terms as the trustee may deem expedient, and to collect with all dispatch the debts outstanding, and out of the proceeds to pay and discharge, first, the costs and expenses attendant upon the execution of the trust; secondly, the debt of Perrine & Crocheron, who are one of the parties of the third part, for $225, due for house rent; thirdly, to pay *pari passu* the debts of all

creditors who should sign the deed within ninety days from its date; fourthly, to pay in like manner, out of any residue that might remain, all those creditors who might sign the deed within one hundred days from its date; fifthly, to pay in like manner, out of any residue that might still remain, the debts of all those creditors who might sign the deed within one hundred and twenty days.

It is next provided, that the trustee shall continue to conduct the business of the firm, as it was then conducted, for the benefit of all concerned, until the assent of the creditors to the deed could be obtained, or their dissent ascertained, or until the expiration of a reasonable time for such assent to be given after notice; and should then proceed to sell as before directed. The trustee is empowered to appoint all necessary clerks and agents, to assist him in the execution of the trust, and to allow them such compensation as he may deem proper, out of the trust funds, and to pay himself a reasonable compensation out of the same. It is then declared, that the purchasers of the trust property from the trustee shall be exempt from all responsibility, in respect to the faithful application of the trust moneys, and that the trustee shall only be chargeable for his own acts and defaults, and for such money as shall actually come to his hands, and such losses as shall happen through his wilful default. The trustee is next appointed the lawful agent and attorney in fact of the grantors, to demand, collect and sue for all claims due to the firm, with power to make compromises, grant acquittances, and appoint agents and attorneys under him at pleasure, for the like purpose.

It is next provided, that, after the business of the firm has been conducted as usual for the space of ninety days, the stock of merchandize shall be sold at auction, for cash, after due notice, unless the trustee and the creditors may agree upon other terms of sale. Then follows a provision, by which the several creditors, in consideration of the premises, remise, release, relinquish and forever quit-claim all debts, demands, suits and actions of every kind against the said grantors. This deed, of which the substance has been stated, was dated October 13, 1849, and recorded on the 15th October.

The bill alleges, that Lodor, the trustee, has taken ostensi-

Rankin, Duryee & Co. et al. v. Lodor et al.

ble possession of the stock of goods conveyed by the deed, and had sold a part thereof to the amount of $500 or $1000, before the said attachments and executions were levied; that sundry other judgments were rendered against the Ransoms, on the same day on which the judgments of complainants were rendered. The complainants claim the interference and assistance of chancery on six distinct grounds. These are:

1. That Joel W. Ransom is a non-resident, and has property in this State, and they invoke the provisions of the act of February 5, 1846, on this ground; also on the ground that the said firm are fraudulently disposing of their property. They allege no actual fraud, but insist that the deed is wholly inoperative and void, until the actual express assent of all the creditors is obtained; and they allege, that only two or three out of all the creditors have actually assented;

2. But if this position is not correct, then complainants aver that the deed is wholly void, except as to the assenting creditors, so far as respects complainants and their debts, for which liens upon the property have been fixed by the levies of the attachments and executions; and that, notwithstanding the existence of such liens, the trustee is in possession of the property, and is proceeding to dispose of it, so as to render fruitless complainants' superior diligence in fixing their liens upon it;

3. Independently of the statute of 1846, complainants claim the right to come into a court of equity, to relieve the property from the incumbrance imposed upon it by the deed, and to prevent its sacrifice, if sold under their executions and attachments while so embarrassed;

4. Complainants claim the right to come into equity, to have the assets properly marshalled, inasmuch as some of their debts are the individual debts of Elijah Ransom, and others are firm debts; and the property is also mixed;

5. Complainants seek a discovery of further assets belonging to said firm;

6. They set out a list of the debtors to the firm, and also to the individual partners, and ask that the money in their hands be condemned.

The bill prays, that the property may be attached; that the trustee and all other persons may be enjoined from col-

lecting, selling, or disposing of it, without the further order of the court; that the assets may be properly marshalled, and the lien of the complainants settled, and declared to have priority, and to be first paid out of the proceeds.

A supplemental and amended bill was filed, which supplies some defects and omissions of the original bill, by making some other creditors who had signed the deed parties defendants, and by extending the scope of the bill to other debts. This supplemental bill charges, but in general terms only, both actual and constructive fraud upon the deed of assignment, and prays that it may be declared void.

Elijah Ransom answers the bill at great length, setting forth a history of his business, and the circumstances by which he became so much embarrassed; denies all fraud in the execution of the deed of assignment, and undertakes to show that the course which he adopted was the best and safest for all parties concerned. This answer was filed January 24, 1850.

Lodor, the trustee, did not answer the bill, but, on the 11th December, 1849, he filed his original bill against Rankin, Duryee & Co. and the other complainants in the first bill. In this bill, he sets up the deed of assignment, and alleges that it was executed fairly, honestly, and with the *bona fide* intention of making the most out of the assets of the firm for the payment of their debts. The bill sets out all the provisions of the deed, and a list of all the debts secured by it. It then alleges, that notice was given to the creditors by the trustee, to come in and sign it, informing them that the deed had been recorded, and the property delivered into his possession; that he kept the store open, hired a competent clerk, and continued to sell goods until November, 23, 1849, when he was prevented from carrying on the business any longer, by the levy of the attachments and executions of the several creditors who are made defendants to the bill; that, at this time, he had not been able to receive answers from most of the creditors, respecting their willingness to sign the deed, and that they were afterwards prevented from doing so, by the seizure of the goods under these attachments and executions; that, owing to the seizure of the goods, it is not in the power of the trustee to execute the trust, though willing and anx-

ious to do so; that, at the time the deed was executed, there were no liens fixed by law on the property, and all the creditors had the same right to come in and assent to its provisions.

The prayer of the bill is, that, for the protection of the creditors and the trustee, the deed may be declared good and valid; that the property conveyed by it may be disposed of, and the proceeds distributed among the creditors under the provisions of the deed, according to the directions of the court; that the said defendants and the sheriff be enjoined from proceeding to sell under the attachments and executions, and that they be required to re-deliver the property to the trustee; and that the court would fix the compensation of the trustee and his solicitors.

By agreement between the parties, formal answers to both bills were considered as filed, in short, without affidavit, and the two cases were brought to a hearing together, by consent, upon an agreed state of facts. This agreement contains all the material facts above stated, relating to the execution of the deed, the insolvency of the grantors, the non-residence of Joel W. Ransom, the recovery of judgments by the several complainants, and the levy of their attachments and executions. It was admitted, that the following were all the creditors who had assented to the deed, viz: Perrine & Crocheron, October 31, 1849; Lucretia Watrous and Tracy, Allen & Co., December 15; Arcularing & Bennett, December 19; Hotchkiss & Fenner, December 29; Murphy & Benedict, December 27; Howe, Mather & Co., December 31; Charles P. Freeman, January 4, 1850; E. & J. Bussing, Tweed & Burrows, and Dickins & Churchill, January 9, 1850; and Henry Stoddard & Co., January 11, 1850.

The Chancellor decreed, that the deed of assignment was valid *in toto;* that the injunction of Rankin, Duryee & Co. *et al.* should be dissolved; and that the injunction of Lodor should be made perpetual. The register was ordered to take and state an account, and some other formal orders were made.

Upon this decree, Rankin, Duryee & Co. *et al.* sued out a writ of error, and now assign for error:

1. That the court erred, in not declaring the deed of as-

signment void, for the want of the assent of all the creditors, and decreeing distribution of the assets in the hands of the trustee among the creditors according to their respective liens, regardless of the assignment;

2. That, if the deed should not have been absolutely set aside, for want of the assent of all the creditors, it should have been set aside as to all the creditors who did not assent before the levies of complainants' attachments and executions were made; none of the creditors having assented at that time, except Perrine & Crocheron.

LAPSLEY & HUNTER, for plaintiffs in error:

I. We do not think it necessary to deny the validity of the deed, on the ground of fraud on its face, or of fraud in fact. The simple ground we take, is, that the express assent of the creditors is necessary to make it operative and effective. An express assent was necessary, for three reasons:

1. The deed itself expressly requires it; the creditors are to sign it, and a clause is inserted in it by which they release all their debts, except what they may get under the deed;

2. The clause requiring a release of their debts from the creditors, undoubtedly requires their assent. It cannot be pretended, that the debtor alone has the right thus to change his original contracts, by making his creditors accept a part of their debts in satisfaction of the whole. Our Supreme Court has decided, that he cannot, without their express assent, extend the time of payment.

3. The deed gives powers to the trustee which render an express assent of all the creditors indispensable. He has the most plenary powers; he is to have the absolute control of the property; he may sell, arbitrate, compromise, appoint agents, employ attorneys, pay them commissions, and retain his own commissions out of the proceeds of the trust property; and yet he is only to be liable for his own "wilful defaults," and for the money which actually comes to his hands.

All the authorities agree, that, when the deed imposes any conditions on the creditors, their express assent is necessary. Express assent is unnecessary, only in those cases where the deed is absolute, imposes no conditions, and is clearly beneficial. Elmes v. Sutherland, 7 Ala. 262; Lockhart v. Wyatt,

10 ib. 231; Hodge v. Wyatt & Houston, ib. 271; Cullum v. Bloodgood, 15 ib. 42; 2 Story's Equity, §§ 1036 b, 1045, 1046, 1196.

II. If the express assent of *all* the creditors was necessary, to give the deed *any* validity or efficacy, then the complainants in this bill are entitled to precedence over all the other creditors, because, by their superior diligence, they have first fixed a lien on the property; but if the court should hold, that the creditors who signed the deed before the attachments and executions were levied, are entitled to the preference, then we contend, that the deed is valid *as to them only*, and that the complainants are certainly entitled to preference over the other creditors, who did not sign until after their levies were made. Perrine & Crocheron are the only creditors whose debt is to be paid absolutely and unqualifiedly. Their assent is to be presumed, because the deed is beneficial to them; the deed is valid as to them, and the legal title being thereby vested in the trustee, rendered our bill in equity necessary, in order to compel the execution of that particular trust, and have the residue of the property appropriated to our debts. As to the other creditors, the deed is but a proposition of compromise, which the debtor himself might revoke before it was accepted; and the complainants, by filing their bill, signify their dissent from the proposition, and thus do what the debtor himself might have done.

III. But a conclusive ground to show that the deed should have been set aside upon the admitted case, is this: There was no admission or proof that the debts secured by the deed had any existence; and it is well settled, that, in a contest with creditors, the debts must be proved. The debts of the complainants are admitted; not so, as to the assenting creditors. McCain v. Wood, 4 Ala. 258; Branch Bank at Decatur v. Kinsey, 5 ib. 9; Goodgame v. Clifton, 13 ib. 584.

CAMPBELL & BYRD, *contra:*

1. As to the first point made by the plaintiffs in error, that the assignment is void, because it was made while suits were pending against the grantors, and on the eve of judgments being recovered: It is indisputably allowable for a debtor to give a preference to certain of his creditors. Grimshaw v.

Walker, 12 Ala. 101; 7 Ala. 142; 4 Ala. 374; 9 Porter, 566. The only preference here given, is to those who first sign the deed. The validity of the deed cannot be in any manner affected by the fact that·suits were pending, or that it was made in order to defeat the lien of the judgments to be rendered, provided it devotes the whole of the property to the payment of the debts of the grantors. 5 Durn. & East, 235; 3 M. & Sel. 37.

2. As to plaintiffs' second point, that the effect of the deed was to hinder, delay and defraud creditors: Actual fraud is not charged; and the only inquiry is, whether there is legal fraud. To give a preference to creditors in the manner in which it is here done, is not fraudulent. If the deed is made upon a good consideration, and is *bona fide,* then it is not fraudulent, though voluntary. 1 Story's Equity, § 353. All that is required is, for the debtor to devote the whole of his property to the payment of his debts. If the judgment liens had attached, or the defendant had been under arrest, it is conceded that the conveyance would have been fraudulent and void, as to the judgment or arresting creditor, Wood v. Borland, 8 Paige 566; or to an assignee in failing circumstances, or known to be insolvent. 8 Paige 417; Cowper 432.

3. As to the third and fourth points, viz: that the deed is not absolute and unconditional, but imposes terms on the creditors, and for this reason is wholly void, until the express assent of all the creditors is given; or, that it is only valid as to the assenting creditors: As a full answer to the first proposition, we refer to the cases of Robinson v. Rapelye & Smith, 2 Stewart, 86; Ashurst v. Martin, 9 Porter, 566; Halsey v. Whitney, 4 Mason, 206; 3 Penn. R. 86; Fox v. Adams, 5 Greenl. R. 245; Haven v. Richardson, 5 N. Hamp. 113; Andrews v. Ludlow, 5 Pick.; Lippincott v. Baker, 2 Binney, 174; Livingston v. Bell, 3 Watts' R. 198. The *quaere* put in the case from Binney's Reports, does not apply to the facts of this case, for the reason that a large number of creditors accepted the deed before any lien attached. This is shown by complainants' bill. In England, deeds with such stipulations are held valid, even against the crown. Rex v. Watson, 3 Price, 6; Johnson v. Arnold & Baker, 4 Barn. & Ald. 479; 8 Moore, 580; 3 B. & C. 6. As to a stipulation

for a release generally, see 4 Durn. & East, 166; 2 Kent's Com. 534, and authorities there cited; 2 Story's Equity, 302; Scott v. Morris, 9 S. & R., 123; 10 ib. 439; 7 ib. 510.

The second branch of this objection assumes, that the deed is wholly void unless assented to by the creditors. This position cannot be maintained, from what has already been shown. It certainly forms no ground of objection, when a trustee is interposed, who assents to the deed; for he will be presumed to have assented for all the creditors. Small v. Marwood, 7 B. & C. 300; 2 Gall. 557; Smith v. Wheeler, 1 Verm. 128; 7 Wheat. 556; 10 Yerger, 146; 4 Johns. Ch. R. 529; Ellison v. Ellison, 6 Vesey, 662; 3 Sim. 1; 2 Mylne & Keene, 492.

PHELAN, J.—Two positions are relied on by the plaintiffs in error: 1. That the deed of assignment from the Ransoms to Lodor as trustee, is inoperative and void in law, for the want of the assent of all the creditors, who are named as constituting the third party to the deed; 2. That, if the deed is not wholly inoperative and void for the want of the assent of all the creditors, at least it is so as to those creditors who had levied upon the property, against such other creditors as had not signed the deed previous to such levy.

The first position we consider to be untenable. It does not require the assent of all the creditors in such a deed of assignment as this, to prevent it from being wholly inoperative. The following may be laid down, as settled legal propositions in this State: A debtor in failing circumstances may make an assignment, preferring one creditor or one class of creditors to another. If he conveys his whole property to trustees, for the payment of his debts, and retains no control whatever over it, and stipulates for no share of the proceeds to result to himself, he may provide for the payment of one class of creditors under the deed absolutely, and for another class only on condition of their releasing all further claim upon him, by signing the deed containing such stipulation. Where the provisions of the deed of assignment are clearly beneficial to a creditor, his assent to the deed will be presumed, without his signing it; where it is not so, his assent will not be presumed, but must be actually had. As au-

thority for these propositions, see Robinson v. Rapelye & Smith, 2 Stewart, 86; Ashurst v. Martin, 9 Porter, 566; Wiswall v. Ross et al., 4 Porter, 321; Gazzam v. Poyntz, 4 Ala. 374; Kinnard v. Thompson, 12 Ala. 487; Governor, use &c. v. Campbell, 17 Ala. 566; Brown v. Lyon & O'Neal, 17 Ala. 659; Elmes v. Sutherland, 7 Ala. 262; Mauldin v. Armistead, 14 Ala. 702; Abercrombie v. Bradford, 16 Ala. 560; 2 Story's Equity, § 1036.

When we consider the foregoing settled principles of law, and look at the provisions of the deed in this case, it needs no argument to show, that such a deed as the present does not require the assent of all the creditors, to give it operative force as a deed. There is a class of deeds in trust, or assignments, which are not good at all, without the assent of all the creditors. It is sufficient to say, that this deed does not come within that class. The class of cases to which I refer, is considered, and the law applicable to them laid down, in the cases of Elmes v. Sutherland, 7 Ala. 262; Hodge v. Wyatt, 10 Ala. 271, and Kemp & Buckey v. Porter, 7 Ala. 138. They are, generally, where a man seeks to postpone the payment of his debts, by conveying property in trust to secure or pay them. In such a case, *all* the creditors must assent, to give *any* validity to the deed, because that is the manifest intention of the grantor. 7 Ala. 262.

The provision of the deed in this case, in respect to the power of the trustee to appoint agents, and touching his responsibility for his own conduct, as well as that of his agents, is a literal copy of the provision in the deed in the case of Robinson v. Rapelye & Smith, 2 Stewart, 86; and the case of Ashurst v. Martin, 9 Porter, 566, is an authority which covers this question, in favor of the validity of such a provision.

It remains to be seen, whether the second position relied on by the plaintiffs in error is correct, viz: that, if the deed is not wholly void and inoperative for the want of the assent of all the creditors, it is at all events so as to those creditors who have refused to sign it, and have made levies on the property, against all who had not signed the deed previous to such levies. What, let us ask, is such a deed of assignment, as the one made by the Ransoms to Lodor? A mercantile firm in failing circumstances, wishing to turn their

property to the best advantage for their creditors, and also to secure to themselves such benefits as the law will allow in such a case, determine, for satisfactory reasons, to provide absolutely for the payment of one or more debts, but in respect to the great body of their creditors, to make to them only a proposal for a compromise. Such a proposal they may lawfully make, either to each creditor separately, or to the whole at once. For obvious reasons, the failing firm prefer to make the offer to all at once, because by that means they will be most likely to gain the benefit which they seek, viz: the acceptance of their offer to compromise. "We have the right by law," say the failing firm, "to prefer one creditor over another, where there are no liens fixed by law on our property. Now, if we propose to give a preference to those who will first accede to this offer to compromise, we have reason to hope and expect that our creditors, to a great extent, will be tempted to accede promptly to our proposal in order to gain this preference?" The assignment of the Ransoms to Lodor is nothing more than an attempt to do, in lawful form, the thing I have been describing. This is the complexion put upon the matter by the argument of the plaintiffs in error, and to this extent I am disposed to agree with them.

So far, then, as concerns Perrine & Crocheron, one of the parties of the third part, the instrument is a deed complete in law under any aspect of the case, putting out of view the question of fraud in fact, which is not presented by the assignment of errors, and seems not to have been made a question in the court below. They signed the deed before the levies of the complainants on the trust property were made; so that, as to them, the instrument is made complete as a deed.

But here the plaintiffs in error insist, that, although the deed, as to Perrine & Crocheron, is complete, the effect of that goes no farther than to make good the priority of Perrine & Crocheron only; and that those creditors who had their attachments and executions levied, after Perrine & Crocheron had signed, but before the execution of the deed of assignment by the other creditors, will be preferred to those other creditors, although the latter may have signed the deed

within the time prescribed by its terms. They consider the instrument, as to all those who did not sign before their levies, as conveying to the trustee nothing but a mere power, which the grantor himself might revoke, as to them, at any time before the execution of the deed by them respectively; and that being a mere power, an attaching or execution creditor may step in, and by his levy revoke it in place of the grantor.

The fault of the argument is found to lie in this position: After the execution of the deed by Perrine & Crocheron, the instrument was no longer a power revocable by the grantor, as to them at least. As has been shown, it then became a deed complete in law, and as such, vested, of course, in the trustee the whole legal title to the trust property. There cannot be the slightest doubt, that, after that event, Lodor, the trustee; could have brought his action of detinue, and recovered against any and all persons who might disturb him in the possession of this property, whether under color of execution against the Ransoms or otherwise. Brown v. Lyon & O'Neal, 17 Ala. 659. No point is raised, as we have said before, by the assignment of errors, touching the question of fraud in fact in the execution of this deed. After the execution of the deed by Perrine & Crocheron, and the vesting of the whole legal title, by force of that act, in the trustee. Lodor, there remained nothing upon which an attachment or execution could be levied, since nothing but the legal title is subject to levy and sale by attachment or execution.

It follows, from what has been said, that those creditors named in the deed of assignment, who came in and executed the deed within the time prescribed by its terms, after the execution of the same by Perrine & Crocheron, although subsequent to the attempt of complainants to levy on the trust property by attachment and execution, were entitled to preference and priority, according to the provisions of the deed of assignment.

Whether it was necessary for the complainant, Lodor, to make proof of the *bona fides* of the debts secured by the deed, as the case is presented; or, if so, whether the admissions on which the parties went to a hearing, do not suffice

for that purpose, we decline to decide, for the reason that the question is not presented by the assignment of errors.

As the points already discussed are the only ones presented for our consideration, we have simply to add, that we find no error in the decree of the Chancellor, in those particulars, and the same is consequently affirmed.