## LANIER *vs.* DRIVER.

1. In a case of interpleader, after the discharge of the complainant, the testimony having been published by consent without prejudice, it is discretionary with the Chancellor to permit an amendment of one of the answers.

2. A deed of trust held not to be fraudulent on its face, which was made without the knowledge of the preferred creditor, whose debt was past due, and reserved to the grantor the use of the property until the creditor ordered a sale.

3. The actual assent of a beneficiary is not required to a deed of trust which is clearly for his benefit.

4. Where a debtor executes two deeds of trust at different times, the beneficiaries in the second deed may enforce the execution of the trust after the law day of their deed, and therefore cannnot complain of the negligence of the others after that time.

ERROR to the Chancery Court of Sumter.

Heard before the Hon. J. W. LESESNE.

THE record shows the following facts : One Henry F. Scruggs, being largely indebted to sundry persons, among whom was Eli M. Driver, his brother-in-law, executed a deed of trust for their benefit, on the 29th of June, 1839, to one James B. Tartt, as trustee. This deed conveys to the trustee the grantor's undivided interest in a certain family of negroes, then in his possession, consisting of a woman named Mary and her three children, Maria, Margaret and Lucinda ; also seven other negroes, a carriage, buggy, horse, and some household and kitchen furniture ; the trustee is authorized to sell, either at public or private sale, on the demand of any of the beneficiaries ; and it is stipulated that the grantor shall remain in possession of the property until the trustee shall deem it necessary to take pos-session for the purpose of executing the trust. Driver's debt, which was secured by this deed, amounted to $1,000, due, by note, about the first of January, 1839.

On the 18th of November, 1841, said Scruggs executed another deed of trust, conveying the same property, except a boy named Wash, to William M. Inge and Robert H. Smith, in trust to secure a debt which he owed to the estate of Wells Thompson, deceased, amounting to about $3,500, payable by instalments on the 8th day of November, 1842, 1843 and 1844. This deed contains the same stipulations as the first, as to the rights of the trustees and the retention of possession by the grantor.

In the year 1846, Smith, the trustee in the second deed, was about to sell the property conveyed by it, when he was noti-fied by M. C. Houston, as the agent of said Driver, that Dri-ver's debt was still unpaid, and that he would insist upon its payment before the debt to Thompson's estate was satisfied. The administrator of Thompson's estate, Sampson Lanier, objected to this ; and it was thereupon agreed between the said parties, each acting through his agent, that Smith should proceed to sell the property, and retain in his hands an amount sufficient to satisfy Driver's claim, and that the parties should take steps to test the validity and *bona fides* of that claim. Smith accordingly sold the property, and retained in his hands the sum of $1,541 87, being the amount claimed by Driver for principal and interest due on his debt. He then filed a bill of interpleader against Lanier, as administrator of Thompson, and

Driver, asking that they might be made to litigate their right to the fund in hands.

Driver filed his answer on oath on the 4th of December, 1846, insisting, that his debt and the deed of trust made to secure it are valid and *bona fide* ; that his debt is yet unpaid, to the whole extent of the funds in Smith's hands ; that he did not agree that Smith should hold the fund subject to future litigation, but that Smith should pay it to him absolutely. He sets up the deed of trust made for his benefit, and insists that it is entitled to preference, by priority of time and right, to the other deed, under which Smith obtained the money ; and he denies all fraud and unfairness in relation to his debt and the deed made to secure it.

On the 25th of September, 1846, Lanier filed his answer on oath, as administrator of Thompson, setting out the agreement between the parties, as alleged in the bill, in reference to the money retained by Smith ; denying the *bona fides* of Driver's claim, and alleging that, if it ever was due, it has been paid by Scruggs. He also insists, that the beneficiaries in the deed under which Driver claimed had permitted the grantor to sell and destroy by use much of the property conveyed by it, and to convert the same to his own use ; that the first conveyed property, not embraced in the second, sufficient, or nearly so, to satisfy Driver's claim, and that he should be compelled to appropriate this property to the payment of his debt, before he can resort to the property included in the second deed ; that the first deed had been kept open, and the trust in favor of Driver unenforced, for six years, for the fraudulent purpose of hindering, delaying and defrauding the creditors of Scruggs.

At the June term, 1847, a decree was rendered, discharging said complainant upon his paying the fund in his hands into court, and ordering said Lanier and Driver to proceed to establish their respective claims to it. At the June term, 1848, an order was made for the publication of testimony by consent without prejudice ; and some of the depositions having been retaken, a similar order was made at the February term, 1849. At the February term, 1851, Driver moved for leave to amend his answer, so as to make it conform to the allegations of the bill respecting the agreement under which Smith sold the property and retained the money ; and in support of his application, he filed the affidavits of himself and his solicitors, stating that

he had answered upon information and belief only as to that matter, and had either misunderstood the facts or been misinformed. This application was contested, but the amendment was allowed.

The Chancellor decreed in favor of Driver's right to the fund in court, and ordered a reference to the master, to ascertain and report the amount of his claim, and whether the first deed embraced any property to which he might resort for payment before going upon the fund in court. The master reported, that there was no other property to which Driver could resort; that the boy Wash, conveyed by the first deed, had been sold by said Scruggs, without the knowledge or consent of Driver, and the proceeds applied to the payment of other debts secured by the deed; that there had been a fair division of the slaves in which Scruggs had an undivided interest, upon which Mary fell to his share, and Lucinda to another; and that Mary had been sold. There were exceptions to this report, but the same was confirmed.

The writ of error is sued out by Lanier, but the errors assigned do not anywhere appear on the record.

TURNER REAVIS, for plaintiff in error:

I. The amendment of Driver's answer was improperly allowed:

1. Because a chancellor only has the discretion to allow an amendment *before* the hearing of the cause. He cannot allow it *after* the hearing.—Clay's Dig. 351, § 37; Evans v. Bolling, 5 Ala. 550; Bryant v. Peters, 3 Ala. R. 171; McKinley v. Irvine, 13 Ala. R. 707; Goodwin v. McGehee, 15 Ala. Rep. 249–50–51.

2. Because the amendment was inconsistent with the answer. Rogers v. Rogers, 1 Paige 424; Verplank v. Merchants' Ins. Co., 1 Edw. 46.

3. Because it made a new case.—Rugely v. Robinson, 10 Ala. 746; McKinley v. Irvine, 13 Ala. 707; Lloyd v. Brewster, 4 Paige 438; Pratt v. Bacon, 10 Pick. 123; Walden v. Bodley, 14 Peters 156.

4. Because the application to amend was not made until after the lapse of several years after the answer was filed, nor until long after proof had been taken, showing the answer to be false,

on the very point in respect to which the amendment was allowed.—Curling v. Townsend, 19 Ves. 628 ; Goodwin v. Mc-Gehee, 15 Ala. 251.

II. The deed of trust for the security of Driver's debt, was void, as against Lanier :

1. Because Driver did not assent to it.—See the cases cited in 1 Reavis' Dig., p. 80, § 45. Even if no act was required to be done by Driver, so as to render his express assent necessary, still, his assent cannot be presumed, because it is proved that he did not know of the existence of the deed until after the execution of the deed for the benefit of Lanier.—8 Cond. Eng. Ch. R. 97.

2. Because it was made to hinder and delay the other creditors of the grantor. This is shown by these facts : It was made without the knowledge or request of Driver; the debts secured by it were all due at the time it was made; it conveyed property consumable in its use; it fixes no certain law day, yet reserves the use of the property conveyed to the grantor; the grantor remained in possession of the property —— years, treating it all the while as his own, selling a valuable portion of it, and using some of the rest in such a manner that it was either destroyed or rendered valueless ; and, while in possession, he declared to Lanier's attorney that Driver's debt was not a subsisting claim on the property. Nothing can be stronger evidence of an intent to hinder and delay creditors, than for a debtor to make a conveyance of his property, for the security of a particular creditor, without the knowledge or consent of that creditor, and reserve the use of the property until that creditor orders a sale.—Somerville v. Horton, 4 Yerg. 541 ; Charlton v. Lay, 5 Humph. 496 ; Farmers' Bank v. Douglass, 11 Smedes & Marsh. 469 ; Richmond v. Crudup, Meigs' R. 581 ; Cram v. Mitchell, 1 Sanf. Ch. R. 251 ; Swift v. Thompson, 9 Conn. R. 63 ; Ravisies v. Alston, 5 Ala. 302 ; Wiswall v. Ticknor, 6 Ala. 184-5 ; Smith v. Leavitts, 10 Ala. R. 93 ; Simerson v. Branch Bank, 12 Ala. 213 ; Dearing v. Watkins, 16 Ala. 25 ; Johnson v. Thweatt, 18 Ala. 741.

III. If Driver assented to the deed for his benefit, or knew of its existence, by permitting the grantor to remain in possession of the property for so long a time, and to use it as his own, he enabled the grantor to commit a fraud upon Lanier. He

11

must, therefore, be the sufferer for the consequences.—Somes v. Brewer, 2 Pick. 202 ; Lupin v. Marie, 2 Paige 172.

IV. There was property conveyed in the deed to Driver, which was not conveyed in the deed to Lanier. Driver, therefore, should have been compelled to resort to that property for the payment of his debt, before being allowed to participate in the fund derived from the sale under Lanier's deed.—Nelson v. Dunn, 15 Ala. 502 ; Baine v. Williams, 11 Smds. & Marsh. 113 ; Clowes v. Dickerson, 5 Johns. Ch. R. 235 ; 8 Ves. 388 ; 9 Ves. 210.

BLISS & BALDWIN, *contra* :

I. There was no error in granting Driver leave to amend his answer, under the circumstances, and in the particular matter specified ; because :

1. The amendment was not in a substantive and material point ; it did not touch the right of Lanier to the money, nor the rights of the parties as against each other ; it only related to the *status* in which, or condition on which, the money was left in Smith's hands. Each of these parties derived his right to it, if any he has, from his own deed ; and the *quo modo* by which he comes at it, or is let into the enjoyment of the fund, is unimportant.

2. Parties who are put to interplead do not fall within the ordinary rules as defendants, as to amendments ; they sustain to each other a sort of double relation, both as complainants and defendants.

3. It does not lie with Lanier to complain that Driver is permitted to amend, thereby making his answer conform, as to the point covered by the amendment, with the answer of Lanier himself.

4. The granting of the amendment was a matter of discretion with the Chancellor, and not revisable on error. The cases cited by the plaintiff were all cases where the leave to amend was denied, and it was held to be no error ; but it does not necessarily follow, that it would have been error to grant it. Each case must be decided upon its own circumstances, and in the exercise of a sound discretion.—1 Dan. Ch. Pr. 480 to 482 ; 2 *ib.* 911 ; 4 Dess. 330, 480 ; 2 Barb. Ch. R. 148, 395, 637 ; 5 Geo. 390 ; 14 New Hamp. 175.

5. The facts in this case well warranted the leave to amend. Driver was a non-resident,—answered upon information as to the matters transacted at Livingston, was misinformed or misunderstood, and fell into error on an unimportant point; and as soon as he discovered his mistake, he applied for leave to amend it, and leave was granted. The amendment was not inconsistent with, and did not vary, the main matter in issue between the parties.

6. The statute does not inhibit the amendment. It merely provides, by way of exception or proviso, that the right before existing shall not be taken away under the enacting clause of the statute.

7. The publication of the testimoy was by consent, and without prejudice; so that no argument can be raised from that fact against the right to amend.

II. The deed is not void. Being for Driver's benefit, his assent will be presumed.—Mauldin v. Armstead, 14 Ala. 702; Lockwoood v. Nelson, 16 Ala. 294. It did not postpone Driver's debt; he might immediately coerce a sale.—Brock v. Headen, 13 Ala. 370. The deed is not fraudulent on its face, and was not fraudulent in fact.—7 Ala. 235, 690, 765, 873; 10 ib. 571; 11 ib. 689; 12 ib. 673; 16 ib. 560; 20 ib. 179.

III. There was no other property to which Driver should be turned. The boy Wash was sold, and applied to the debts in the first deed, which had precedence over Lanier's, and so went to his benefit. In Mary and Lucinda, the grantor had but one fourth interest at the making of the deed; in a subsequent informal division, Mary fell to Scruggs, and Lucinda to a brother of his. The value of the two was equal; Mary was sold by Smith, and the trust fund received her entire value. Driver was in no such default about the few articles of inconsiderable value which were lost, that he should be visited with the loss. But if he were charged with their loss, there would not be enough to pay the balance of his debt in full, after deducting the trustee's commissions.

PHELAN, J.—Smith filed his bill of interpleader against Lanier, administrator of Thompson, and Driver. The bill sets forth that H. F. Scruggs made two deeds in trust; one to Tartt, trustee, in 1839, to secure sundry creditors, and among

the rest Driver, in a note for something over $1,000 ; and the other in 1841, to secure Thompson's administrators, to whom Lanier succeeded. Both deeds embraced the same property ; but the deed of 1839 some property not embraced in the deed of 1841, in which Smith, the complainant in the bill of inter-pleader, was trustee. Smith, the trustee in the second deed, was about to sell the property to pay the debts secured by it, when, as he alleges, he was notified by the agent of Driver that the property was first liable to pay the debts secured by the deed of 1839, and that Driver would insist upon his right to have it so appr opriated. He then further alleges, that, in order to have a sale of the property, an agreement was entered into between himself, as agent of Lanier, and one Houston, as the agent of Driver, that the property should be sold, and that the sum of $1,541 87, the amount of Driver's claim, should be retained by Smith, to be delivered up to him who should be able to show the best right to it.

All the material allegations of the bill are admitted by both Lanier and Driver, with this exception on the part of Driver : he denies any such agreement, and insists in his answer that the amount of his claim was to be retained for him by Smith absolutely, and not subject to any future contestation as to his right to the money.

The proof on this point abundantly sustains the allegation of the bill. The Chancellor decreed, that Smith should pay the money retained by him into court, and that the parties should proceed to contest between themselves the right to it. After the publication of the testimony, but by consent, and without prej-udice, and the argument of the cause, Driver filed a petition to amend his answer, stating that he had denied the agreement as alleged upon information only, and that he had acted either under incorrect information, or a misapprehension of his own, and was now satisfied that the agreement, as to the terms on which the sale was to proceed, and the amount of his claim retained, were truly stated in the bill of Smith. The truth of the facts stated in this petition is strongly supported by the affi-davits of his solicitors, and especially by the one who drew his answer. The leave to amend, though strenuously opposed, was allowed by the Chancellor.

We think this was a matter purely within the sound discre-

tion of the Chancellor, and therefore not revisable on appeal. But, if it were essential to go further, we should be inclined to think that the discretion was properly exercised. The answers to a bill of interpleader, when the complainant is discharged, are looked to for the purpose of ascertaining the title respectively set up by the defendants to the bill, now become contestants to the fund delivered into court. It is questionable whether the ordinary rules wnich govern answers, and amending answers, properly apply in such a case. The answers become rather the bills of complaint of the respective parties.—3 Dan. Ch. Pr. 1765 ; 1 Smith Ch. Pr. 472 ; 2 Story's Eq. § 822.

Now, what is the title respectively set up to this fund by Lanier and Driver ? Lanier relies on the deed of 1841 ; Driver, on the deed of 1839. It is the deed in trust of 1839, that gives Driver the right to this money, as against Lanier, if he is entitled at all, and not the allegation which he makes, denying the agreement set out by Smith, and averring that the money was to be paid to him absolutely, and without contestation. If that deed be good, his answer makes a case which would entitle him to a decree for the money, whether the allegation about the agreement to submit to a contestation was true or false. And if his deed be not good, and the deed in favor of Lanier be good, Lanier, in like manner, would be entitled to the money, irrespective of the nature of that agreement, or the truth or falsehood of Driver's allegation in respect to it.

This leads us to consider the question concerning the validity of the deed of 1839, and the right of Driver to be paid out of the proceeds of the sale of the property embraced in it.

We can find nothing fraudulent on the face of that deed. Many cases in our reports sustain every material feature in it. —See authorities cited in brief of defendant in error ; also Rankin v. Lodor, 21 Ala. 380.

Neither did it require the actual assent of Driver to make it operative in his favor. It is a deed of that character in which the assent of the beneficiaries will be presumed, because it is clearly for their benefit.—See same authorities, and 21 Ala. supra.

The sale of the slave Wash, by Scruggs, the grantor, it is shown, was made by him without the knowledge or consent of Driver, who lived at a distance ; and therefore, whether the pro-

ceeds of that sale went in payment of other debts secured by the deed, and was made with the consent of certain of the beneficiaries, and so lawfully made, as is insisted, need not be considered, so far as he is concerned. There is nothing shown, which would go to charge him with so much of the trust fund wasted or converted, with his connivance or through his neglect. The law day in the second deed, it may be observed, expired in 1842; and if the beneficiaries in the first deed were tardy in enforcing their trust, those in the second had it in their power, after that time, to compel them. This is an answer to the objection that Driver was negligent in closing his trust.

Scruggs conveys an undivided interest, which was one fourth part, in Mary and her children. The proof shows that, after the date of the deed, and before the sale in 1846, H. F. Scruggs and his brothers had a division of the slaves, by which Mary fell to H. F. Scruggs as his share, and she was sold. If this division was fair and equal, and such is the proof, the demands were satisfied by the sale of Scruggs' slave, and the beneficiaries would have no just claim upon Lucinda.

These observations, it is believed, cover all the assignments of error which have been insisted on in the argument; and it will be seen that we find no error in the decree of the Chancellor.

Let the decree below be affirmed, at the costs of the plaintiff in error.